IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01425-JLK

THE ESTATE OF JON L. BOGUE, an Estate of a Deceased Individual, and
VICKI L. McCORKLE, the Executrix of the Estate of Jon L. Bogue,

      Plaintiffs,

v.

PATRICK S. ADAMS, an individual;
SHARON E. ADAMS, an individual;
JOHN ALAN FAVRE, an individual;
SINH T. LY, an individual;
RICHARD J. PRATI, SR., an individual;
JOSEPH N. PECORARO, JR., an individual;
CHOICE INVESTMENT MANAGEMENT, LLC, a Colorado Limited Liability Company;
CHOICE CAPITAL MANAGEMENT, LLC, a Colorado Limited Liability Company;
CIM SECURITIES, LLC, a Colorado Limited Liability Company; and
PVG ASSET MANAGEMENT CORPORATION, a Colorado Corporation,

      Defendants.

---

MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT (ECF 53) AND PLAINTIFFS' MOTION FOR ORDER
DETERMINING NECESSITY OF CERTIFICATE OF REVIEW [etc.] (ECF 29)

---

Kane, J.

      Plaintiffs allege that Defendants violated Colorado statutory and common law,

committing securities fraud, racketeering, conspiracy, breach of fiduciary duty in selling

investments to Jon L. Bogue (Bogue) and managing them on his behalf. Bogue is now deceased,

and the claims are brought by his estate and executrix. The case is now before the Court on

Defendants' motion to dismiss Plaintiffs' Amended Complaint. For the reasons discussed below,

the Court grants the motion in part and denies it in part.

## PROCEDURAL HISTORY

All Defendants filed a motion to dismiss Plaintiffs' original Complaint, arguing among other things that Plaintiffs had failed to allege their claims with sufficient particularity, that their claims under the Colorado Securities Act (CSA) were barred by the CSA's statute of repose, and that Plaintiffs had not filed a certificate of review pursuant to C.R.S. § 13-20-602 to support their claims that the individual Defendants failed to comply with their duties as licensed professionals. Plaintiffs opposed the motion to dismiss and filed a motion asking the Court to determine whether a certificate of review is necessary, and, if so, for leave to file a belated certificate.

On March 11, 2019, the late Hon. Richard P. Matsch granted Defendants' motion to dismiss but granted leave to amend to provide more specific allegations concerning Defendants' respective roles in the alleged wrongdoing. That ruling did not address Defendants' arguments raising the statute of repose and the necessity of a certificate of review.

Plaintiffs filed an Amended Complaint on April 10, 2019. ECF 47. Defendants again moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), once more arguing, *inter alia*, that the allegations lack sufficient specificity, that the securities fraud claims are barred by the statute of repose, and that Plaintiffs' failure to file a certificate of review is fatal to their claims.

## ALLEGATIONS OF THE AMENDED COMPLAINT

In summary, and viewed in a light most favorable to Plaintiffs, the Amended Complaint alleges the following:

Bogue, who was born in 1939, worked during his lifetime as a flight instructor, airline pilot, and commercial truck driver. He retired in 2009, after which his income came from Social Security and his retirement savings. He did not have substantial investment expertise, experience, or sophistication. He died on November 3, 2016. Am. Compl. ¶¶ 23, 35–45; 272.

The individual Defendants except Sharon Adams (who is married to Patrick Adams) are or were registered and/or licensed professionals in the investment industry, variously Certified Financial Advisers (CFAs) (Mr. Adams; Pecoraro); Certified Financial Planner (Favre); Investment Adviser Representatives (IARs) for one or more of the entity Defendants (Mr. Adams; Favre; Ly; Prati); and/or securities brokers (Favre; Ly). *Id.* ¶¶ 48–80.

The individual Defendants held various positions as the organizers, administrators, officers, "direct or indirect" owners, and/or operators of the entity Defendants. *See id.* The entity Defendants were, respectively, a licensed Investment Adviser in the State of Colorado (IA) (Choice Investment Management, LLC); an investment or hedge fund manager (Choice Capital Management, LLC); a broker-dealer that provides investment advice and facilitates the purchase and sale of securities (CIM Securities, LLC); and an asset manager that provides investment advice to customers (PVG Asset Management Corp.). The entity Defendants were affiliated through common ownership, operation, and management by the individual Defendants in their respective roles. *Id.* ¶¶ 80–117.

In addition to their positions and roles in the entity Defendants, Mr. and Mrs. Adams, Favre, Ly, and Prati were also directors, officers, and/or owners of two other non-Defendant entities, Maroon Bells of Colorado, Inc., and Centennial Brands, Inc. *Id.* ¶¶ 53–54; 57–58; 65; 72–73; 77–78.

Defendants (collectively) "are the organizers, administrators, managers and/or officers of a series of limited liability ventures, referred to as Pooled Investment Vehicles" (PIVs). *Id.* ¶ 19. The PIVs were generally limited partnerships in which one of the entity Defendants (Choice Capital) acted as general partner. *Id.* ¶ 94. Defendants, in their respective roles, offered and sold

interests in the PIVs, advised customers concerning their PIV investments, and advised and managed the PIVs.

Summarizing Defendants' alleged wrongdoing, the Amended Complaint alleges that they knowingly and with an intent to defraud their investor clients, perpetrated a complicated scheme whereby they offered and sold securities and provided investment advisory and broker-dealer services to clients, while at the same time systematically manipulating the investments they were selling for their own benefit and for their own enrichment, to the detriment of their unsuspecting and often elderly investors, who lacked investment expertise and experience. *Id.* ¶ 18.

Regarding Bogue specifically, the Amended Complaint alleges on information and belief that Bogue met Favre in the mid-1990s and began investing his savings with Favre shortly thereafter. *Id.* ¶ 38. The Amended Complaint does not allege, in detail or even generally, the nature of Bogue's investments with Favre in the years before Favre's later affiliation with the other Defendants.

In early 2005, Defendant Favre established a relationship with Mr. and Mrs. Adams and Ly and their respective affiliated companies, at which time they entered into an agreement for Favre to promote and sell units in Defendants' PIVs for compensation based on the amounts invested. *Id.* ¶¶ 135–36. In that same timeframe, acting "in conjunction with" Mr. Adams, Mrs. Adams, and Ly, Favre began soliciting Bogue, gained his trust, and sought to have him invest his individual retirement account (IRA) and non-qualified retirement savings in Defendants' PIVs, which were high-risk investments. Exploiting Bogue's lack of financial sophistication and using their respective qualifications and licensure to provide legitimacy, those Defendants established discretionary accounts for Bogue's IRA and non-qualified retirement savings and placed hundreds of thousands of dollars of Bogue's money in Defendants' PIVs. *Id.* ¶¶ 22–23; 137–142.

In the course of obtaining and using Bogue's investments in discretionary accounts, and exercising their discretionary authority over the accounts, Favre, Mr. Adams, Mrs. Adams, and Ly allegedly completed subscription instructions without seeking or obtaining Bogue's actual signature and without disclosing the risks of the investment or providing all required investment documents to Bogue, and fraudulently obtained and used one or more Medallion Guarantees of Bogue's signature to complete other investment documents, all without Bogue's presence or knowledge. *Id.* ¶¶ 144–151. They knew that the amounts being placed in high-risk private partnerships represented more than 70% of Bogue's investable assets and over 50% of his net worth. *Id.* ¶ 26. In recommending and placing Bogue's money in these investments, the foregoing Defendants failed to conduct any reasonable or good faith inquiry into Bogue's investment objectives, financial situation, and actual needs. *Id.* ¶¶ 143, 229.

Pursuant to this scheme, the "foregoing Defendants" put Bogue in the following specific investments:

- October 5, 2005: $50,000 in non-qualified retirement funds in Cynergy CP, LLC;

- June 26, 2006: $50,000 in IRA funds in Cynergy CP, LLC;

- April 9, 2007: $75,000 in IRA funds in Cynergy All Seasons;

- April 9, 2007: $75,000 in non-qualified retirement funds in Cynergy All Seasons;

- February 29, 2008: $30,000 in IRA funds in Cynergy All Seasons;

- February 29, 2008: $75,000 in non-qualified funds in Cynergy All Seasons;

- April 16, 2008: $25,000 in non-qualified funds in Cynergy Healthcare Investors, LLC.

*Id.* ¶¶ 146–58.

On June 5, 2008, Mr. Favre met with Mr. Bogue and, in doing so, made a drawing and notes about Mr. Bogue's investments, allegedly representing the value of Bogue's IRA, non-IRA, and other sources of income at that time. *Id.* ¶ 159 and Ex. 6. The Amended Complaint does not allege that any information in this document was false, misleading, or otherwise actionable.

Later statements sent to Bogue show that as of September 30, 2008, Defendants had placed nearly $250,000.00 of Bogue's money in Cynergy CP, LLC; over $45,000.00 of non-IRA assets in the Adams Market Neutral Fund, LLLP; and more than $45,000.00 of Bogue's IRA assets in the Adams Market Neutral Fund, LLLP. *Id.* ¶¶ 160–62.

A February 6, 2017, letter from Defendants Prati and Choice Capital Management responding to an inquiry from the Bogue Estate reflected a total of $520,199.34 of Bogue's IRA and non-qualified retirement savings invested in Defendants' PIVs. This letter also advised that the funds in which Bogue's money was invested owned certain non-liquid assets that required certain "liquidity events" to occur before the funds could be liquidated. *Id.* ¶ 184; Ex. 11.

In recommending and operating the PIVs, Defendants "Mr. Adams, Mr. Favre, Mr. Ly, Mr. Prati, Mr. Pecoraro and, upon information and belief, Mrs. Adams, along with Choice Investment, Choice Capital, CIM Securities and PVG Asset Management" (that is, all of the Defendants) failed to disclose conflicts of interest, their compensation arrangements and the excessive amounts they were paying themselves. *Id.* ¶¶ 165–69.

Specifically, Defendants (collectively) failed to disclose affiliations with related companies and other material facts concerning companies in which Defendants' PIVs were investing or making payments. For example, these included:

- Failing to disclose approximately $388,023.00 in brokerage commissions and other fees paid in 2005 by three of Defendants' PIVs to CIM Securities (*id.* ¶¶ 168);

- Encouraging selected investors, including two PIVs, to participate in a "sell-back" of units of Cynergy CP LLC in 2009, but failing to inform other investors, such as Bogue, that the sell-back was occurring (*id.* ¶ 170);

- Failing to disclose that between March 2011 and October 2012 Cynergy Emerging Growth LLC and Cynergy Healthcare Investors Fund, LLC 2009 invested $1,425,000.00 in Maroon Bells, a company in which Mr. and Mrs. Adams and Ly were owners and officers (*id.* ¶¶ 171–73);

- Failing to disclose that between August 2012 and August 2013 Cynergy All Seasons invested $570,000 in Centennial Brands, a company in which Mr. and Mrs. Adams, Prati, and Ly were officers or affiliates or held ownership interests (*id.* ¶¶ 174–75);

- Failing to disclose that interests held by Defendants' PIVs in Life Care Medical Devices (Life Care) were so substantial that they over-weighted the PIVs' total interest in an extremely risky company such that investors' interests could not be liquidated (*id.* ¶¶ 176–78);

- Failing to disclose that 7,597,062 shares of Life Care were held by Echo Resources LLC, a company owned by Mrs. Adams and over which Mr. Adams exercised sole voting and investment control; and that 1,452,500 shares of Life Care were held by New Generation Resources, LLC, which was owned by Ly and his wife along with Mr. and Mrs. Adams, and over which Mr. Adams exercised sole voting and investment control (*id.* ¶ 179–83);

- In the February 6, 2017 letter described above, advising the Estate that certain events had to occur before Bogue's interests could be sold, and representing that they expected favorable market prospects for a Life Care medical device, while failing to disclose that Prati had filed a Form 8-K in 2015 stating that Life Care expected its common stock to be deregistered in the near future for failure to file timely reports and that the SEC had, in October 2015, revoked the registration of Life Care's securities for failure to file necessary periodic reports (¶184–87; Ex. 11; Ex. 13).

Defendants (collectively) also failed to comply with the Investment Advisers Act of 1940 (Advisers Act) and the Colorado Securities Act by failing to disclose (1) financial conditions that might impair their ability to meet contractual commitments to the clients and (2) legal or disciplinary events material to a client evaluating that IA's integrity or ability to meet commitments to clients. *Id.* ¶ 192.

Prior to June 2016, the Colorado Division of Securities began investigating Defendants pursuant to the Colorado Securities Act, and ultimately made findings including the following:

- Mrs. Adams was employed as the Vice President of Maroon Bells from at least August 2010;

- Mr. Adams served as Maroon Bells' Chairman of the Board beginning January 2012;

- Mr. Adams served as Chairman of the Board of Centennial Brands beginning June 2012;

- Between March 2011 and October 2012, Defendants' PIVs Cynergy Emerging Growth LLC and Cynergy Healthcare Investors Fund, LLC 2009 invested $1,425,000.00 in notes and repurchase agreements in Maroon Bells;

- Between August 2012 and August 2013, Defendants' PIV Cynergy All Seasons Fund, LP purchased 1,498,571.43 units of Centennial Brands for a total of $570,000.00;

- Mr. Adams and Choice Investment never disclosed to investors in Defendants' PIVs Mr. Adams' board membership nor his nor his wife's financial interests in Maroon Bells or Centennial Brands;

- Mr. Adams and Choice Investment violated C.R.S. §11-51-407(5)(a)-(f) by failing to have the independent representative or gatekeeper of Choice Investment review and approve the foregoing transfers between funds;

- Mr. Adams and Choice Investment violated C.R.S. § 11-51-409.5 by failing to furnish each IA client and each prospective IA client with a Form ADV Part 2 or compliant written document disclosing Mr. Adams' financial interest and board membership in Maroon Bells.

*Id.* ¶¶ 193–210.

On June 7, 2016, based on the foregoing findings, the Securities Commissioner for the State of Colorado entered a Stipulation for Consent Order and Consent Order (Consent Order), in *In the Matter of Patrick S. Adams and Choice Investment Management, LLC*, Order Number 2016-L-14. *Id.* ¶ 213; Ex. 14. In the Consent Order, Mr. Adams and Choice Investment agreed to permanently cease and desist from violations of the Colorado Securities Act and rules under the same, and to retain a qualified "compliance services consultant" to provide compliance review of all issues raised in the Consent Order for a period of four years. *Id.* ¶ 214.

All Defendants were allegedly aware of the events, acts and omissions, and investigation that led to the Consent Order involving Mr. Adams and Choice Investment, but concealed their knowledge from Bogue and Plaintiffs, among others. *Id.* ¶ 215.

Mr. Adams and Choice Investment, "along with the other Defendants," failed to comply with the Consent Decree and "used a variety of tactics" to "continue their shell-game" and shield themselves from liability, including failing or refusing to provide documentation on Bogue's accounts. As a result, Bogue "remained largely unaware of the true nature of his investments and of Defendants' conduct." *Id.* ¶ 216. Bogue's awareness of his retirement accounts was further diminished when he was advised by Ly that Favre had "gotten sick" and left Choice Investment, CIM Securities and PVG Asset Management sometime in 2015. *Id.* ¶ 218.

After Bogue died in November 2016, the Bogue Estate and McCorkle spent months unsuccessfully seeking information from Defendants about the accounts and attempting to liquidate them. Defendants, "including Mr. Adams, Ly, and Prati," knowingly continued to use a "variety of tactics" to avoid accountability for the investments and thereby concealed facts and prevented Bogue and the Bogue Estate from identifying Defendants' conduct and knowing the relevant facts earlier. *Id.* ¶ 220. These tactics included "misstating the amounts of the investments, … referring Plaintiffs to the investment custodian, and … asserting that the investments in Defendants' PIVs were 'illiquid' and therefore unavailable to Plaintiffs. *Id.*

After Bogue's death, Plaintiffs have unsuccessfully demanded a complete and accurate accounting of Bogue's investments. *Id.* ¶ 285.

Based on these allegations, the Complaint alleges eight claims for relief under Colorado law:

- <u>First Claim</u> (all Defendants except Pecoraro): securities fraud and aiding and abetting securities fraud in violation of the Colorado Securities Act (CSA), C.R.S. §§ 11-51-501 and 11-51-604;

- <u>Second Claim</u> (all Defendants except Favre): control person and aiding and abetting liability under the CSA, C.R.S. § 11-51-604(5)(a), (b), and (c);

- <u>Third Claim</u> (all Defendants): participating in and aiding and abetting violations of the Colorado Organized Crime Control Act, C.R.S. §§ 18-17-101, *et seq.*;

- <u>Fourth Claim</u> (all Defendants except Pecoraro): breach of fiduciary duty and duty of loyalty;

- <u>Fifth Claim</u> (all Defendants except Pecoraro): conspiracy to commit securities fraud and violations of COCCA;

- <u>Sixth Claim</u> (Choice Investment, Choice Capital, CIM Securities, PVG Asset Management): demand for accounting;

- <u>Seventh Claim</u> (all Defendants except Pecoraro): piercing the corporate veil, reverse piercing, and injunctive relief.

The Complaint demands a money judgment for economic losses; pre- and post-judgment statutory interest; exemplary damages; treble damages pursuant to COCCA, C.R.S. § 18-17-106(7); rescission or rescissionary damages; an order for an accounting for and disgorgement of all funds fraudulently obtained from Bogue's investments; and an order piercing the corporate veil of the entity Defendants and holding the individual Defendants liable, and vice versa, as appropriate.

## **DISCUSSION**

### **Sufficiency of Fraud Allegations**

#### **A. Legal Standard**

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, the claim survives a motion to dismiss. *Id.* at 1950. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint "has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

Fed. R. Civ. P. 9(b) requires that "[f]or any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Technology Corp. Securities Litigation*, 147 F.Supp.2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus, a plaintiff in such a case must plead "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Rule 9(b)'s purpose is to afford defendants fair notice of a plaintiff's claims and the factual ground on which they are based. *Id.*

### B. Colorado Securities Act (First and Second Claims)

Plaintiffs' First Claim alleges that all Defendants except Pecoraro violated §§ 11-51-501 and 11-51-604 of the Colorado Securities Act by offering or selling securities to Bogue through untrue material statements and material omissions, and thereafter engaging in a "coordinated effort" "in concert with one another" to place and maintain Bogue's retirement funds in Defendants' PIVs for their own use and benefit, failing to disclose their compensation and conflicts of interest, failing to disclose the Colorado Securities Division's investigation and findings, and so on, as summarized above.

Similarly, the Second Claim alleges that all Defendants except Favre knew that each other Defendant engaged in conduct violating C.R.S. § 11-51-501, including misrepresentations and omissions and employment of devices, schemes, and artifices to defraud Bogue and other investors, and thereby knowingly and substantially assisted each other, "variously directly and indirectly controlled each other," and therefore are also liable under C.R.S. § 11-51-604(a), (b), and (c).

Nowhere, however, does the Amended Complaint allege with any specificity, among the ten Defendants, facts forming the basis for <u>each Defendant's</u> liability. To the extent these claims are based on the offer or sale of securities by way of false representation(s), not a single allegation in the entire Amended Complaint identifies, as to any alleged misrepresentation, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch*, 203 F.3d at 1236. Indeed, the Amended Complaint is silent regarding any representation made—by anyone—to induce Bogue to invest. It alleges only that Bogue had met Favre in the mid-1990s, began investing his savings with him shortly thereafter, and then apparently followed Favre when he affiliated with Mr. and Mrs. Adams in 2005. The Amended Complaint does not allege a single representation of fact by any Defendant to Bogue, much less the time, place, and consequences of any such representation.

The Amended Complaint does allege seven specific investments made by Bogue or on his behalf—from October 5, 2005 to April 16, 2008—but it does not allege that any of those investments was made in connection with or as the result of a specific false statement or omission, or that it was made or induced by any particular Defendant. Instead, to give just one example, the Amended Complaint alleges that certain of the Defendants (all except Pecoraro) completed subscription instructions "or other documents" without disclosing risks or providing the required documentation to Bogue, and that "they" obtained one or more Medallion Guarantees without Bogue's knowledge. Such generalized group allegations are insufficient to satisfy Rule 9(b)'s particularity requirement.

Likewise, to the extent this claim is based on material omissions, the Amended Complaint fails to identify what statements were made, by whom, and when, from which alleged material facts were omitted. The Amended Complaint alleges broadly that <u>after</u> Bogue invested

his money, some or all of the Defendants failed to disclose, on an ongoing basis from mid-2005 to the present, conflicts of interest, excessive compensation, Defendants' various interests in the related entities allegedly participating in the alleged scheme to defraud, and other violations of the Colorado Securities Act that were allegedly part of their fraudulent investment scheme. But no plausible factual allegations specify when such non-disclosures occurred, who made any statements from which such facts were omitted, or, importantly, the consequences of any such alleged omissions in the context of Bogue's decision(s) to invest or take other action.

Similarly, the securities fraud claims rely heavily on allegations that Defendants had discretionary authority over Bogue's investments, failed to take reasonable steps to determine the suitability of chosen investments, and failed to disclose material facts in connection with Defendants' decisions in exercising their discretion. But nowhere does the Amended Complaint identify which Defendant(s) had discretionary authority over any particular investment decision, how that discretion was obtained, and what material fact or facts were not disclosed in connection with each decision.

 This lack of particularity renders it impossible to discern what plausible claim may exist against each Defendant from any such non-disclosures.

Plaintiffs' allegations regarding the investigation, findings, and Consent Order entered by the Colorado Securities Commissioner do not cure these deficiencies. The Amended Complaint alleges that the investigation was "into Defendants' conduct." In fact, only Mr. Adams and Choice Investment Management were Respondents in that proceeding. No findings implicate any other Defendant in the nondisclosures found in the Consent Order.[1] Further, the Consent Order's

---

[1] The Consent Order finds that Mrs. Adams was "employed as the Vice President of Maroon Bells from at least August 2010." Ex. 14. She was not a Respondent, however, and the Consent order makes no findings that she had any disclosure duty or otherwise was involved in the violations.

findings, which concern failures to disclose affiliations and provide clients with disclosure documents, provide no factual basis for a plausible claim tying the violations to any consequences to Bogue—such as by inducing investments or otherwise causing Bogue to make an investment-related decision. Bogue's investments specifically identified in the Amended Complaint occurred between October 2005 and April 2008, while the violations found in the Consent Order occurred between March 2011 and August 2013. Ex. 14. Even viewed in a light most favorable to Plaintiffs, these allegations do not provide a factual basis to do more than speculate concerning any causal connection between the violations found in the Consent Order and any harm to Bogue resulting from the acts or omissions of any particular Defendant.

The Amended Complaint's allegations of securities fraud suffer from the same deficiencies that led this Court to dismiss the original Complaint. Plaintiffs' previous allegations that "Defendants" as a group engaged in securities fraud have been narrowed only cosmetically, predominantly by individually naming some, most, or sometimes all of the Defendants in connection with the same conduct, but still without identifying who did what, when, and with what result. Such allegations do not provide fair notice to the Defendants as to the securities fraud claims being asserted against each of them and the factual grounds for those claims.

### C.  Colorado Organized Crime Control Act (COCCA)

"Rule 9(b) also governs the pleading of a RICO or COCCA claim which involves fraud." *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D. Colo. 1995) (citing *Cayman Explor. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989); *Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1303 (D.Colo.1984)). Plaintiffs' COCCA claim is predicated on the same allegations of fraud as their securities fraud claims. *See* Amended Complaint ¶¶ 254 (alleging that all Defendants engaged in a "scheme involving the unlicensed and fraudulent sale of

interests in Defendants' PIVs"). This claim fails to meet the requirements of Rule 9(b) for the same reasons.

## D. Conspiracy

Plaintiffs' Fifth Claim, for civil conspiracy, incorporates the allegations of the previous claims and alleges that all Defendants except Pecoraro "have committed torts against Mr. Bogue and Plaintiffs, including, but not limited to, securities fraud and violations of the Colorado Organized Crime Control Act." Am. Compl. ¶ 275. As such, this claim is also subject to Rule 9(b), and fails for the same reasons as the securities fraud and COCCA claims. *See, e.g., Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1230 (D. Colo. 2018) (dismissing civil conspiracy claim based on fraud where it lacked sufficient "detail about who allegedly did what, when, and why such actions were false or fraudulent"; and further failed to explain how defendants participated in a conspiracy with each other rather than merely participating in parallel conduct); *see also Touchstone Group, LLC v. Rink*, 913 F. Supp. 2d 1063, 1076 (D. Colo. 2012) (claims "sounding in fraud" are subject to Rule 9(b)'s heightened pleading requirement).

## <u>Breach of Fiduciary Duty</u>

Defendants argue that Plaintiffs' Fourth Claim, for breach of fiduciary duty, is barred by Colorado's three-year statute of limitations, C.R.S. § 13-80-101.[2] Defendants argue only that the acts at issue occurred "primarily" between 2005 and 2008—the alleged dates of Bogue's investments—and therefore any breaches of fiduciary duty occurred more than three years before the Complaint was filed.

---

[2] This statute provides that all actions for breach of trust or breach of fiduciary duty "shall be commenced within three years after the cause of action accrues…." C.R.S. § 13-80-101(f). For purposes of the statute of limitations, a cause of action for breach of fiduciary duty accrues on the date the "claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another." *Colburn v. Kopit*, 59 P.3d 295, 296–97 (Colo. App. 2002).

For dismissal pursuant to Rule 12(b)(6) to be appropriate based on the statute of limitations, Plaintiffs must plead dates "which establish on the face of the complaint that their claims are time-barred." *Bistline v. Parker*, 918 F.3d 849, 889 (10th Cir. 2019) (citing *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("To be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.")).

Plaintiffs have not pled themselves out of court. The Amended Complaint alleges ongoing breaches of fiduciary duties by Defendants in connection with their management of Bogue's investment accounts. Those breaches included failures to disclose conflicts of interest, paying and failing to disclose excessive compensation, and other ongoing wrongful conduct in managing Bogue's investments, from the time Bogue first invested to the present.

The Amended Complaint further alleges that Defendants' breaches of fiduciary duty could not reasonably have been discovered until June 7, 2016, when the Colorado Securities Division entered its Consent Order finding violations by Mr. Adams and Choice Investment Management.

Defendants do not challenge the sufficiency of—or even mention—these allegations. They suffice to withstand a motion to dismiss.

Defendants also argue that Plaintiffs' breach of fiduciary duty claim is barred because Plaintiffs have failed to allege the specific harm or damages flowing from the alleged breaches of fiduciary duty or from any post-investment wrongdoing. Defendants' motion and reply cite no authority to support this argument. *See* D.C.COLO.LCivR Rule 7.1(d) ("[A] motion involving a contested issue of law shall state under which rule or statute it is filed and be supported by a

recitation of legal authority in the motion."); *Arizona Public Serv. Co. v. U.S. E.P.A.*, 562 F.3d 1116, 1130 (10th Cir. 2009) ("We need not address unsupported, conclusory arguments.").

Viewing the allegations most favorably to Plaintiffs, the Court finds that the Amended Complaint adequately alleges damages flowing from the alleged breaches of fiduciary duties.

## Statute of Repose

Defendants argue that Plaintiffs' securities fraud claims are barred by the CSA's statute of repose, C.R.S. § 11-51-604(8). Because the Court is dismissing those claims for failure to plead fraud with particularity, this argument is moot and need not be addressed.

## Accounting

Defendants' motion to dismiss does not mention Plaintiffs' Sixth Claim for Relief, which seeks an accounting based on Plaintiffs' unsuccessful efforts to obtain a complete accounting from Defendants concerning Bogue's investments, or an explanation why such an accounting cannot be provided. Under Colorado law, an accounting is an extraordinary equitable remedy that may be ordered if the plaintiff is unable to determine how much, if any, money is due him or her from another. *Andrikopoulos v. Broadmoor Mgmt. Co.,* 670 P.2d 435, 440 (Colo. App. 1983). A plaintiff must plead and prove a demand for an accounting and refusal to comply. *Postal Instant Press v. Jackson,* 658 F. Supp. 739, 743 (D. Colo. 1987). The Amended Complaint makes those allegations. Am. Compl. ¶¶ 285–289.

## Piercing the Corporate Veil

Plaintiffs' Seventh Claim seeks relief piercing the corporate veils of the entity Defendants as well as "reverse piercing" as necessary to remedy the entity Defendants' alleged lack of independent existence and the individual Defendants' alleged misuse of the entities for their own personal gain.

"To determine whether piercing the corporate veil is appropriate, the Court must first inquire into whether the corporate entity is the alter ego of the shareholder." *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006). An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Id.* (citations omitted). In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. *Id.*

The Amended Complaint does not allege facts to support a piercing claim. The alleged interrelationships of the entities, and the individual Defendants' roles in various capacities in the respective entities, are insufficient under Fed. R. Civ. P. 8(a) to constitute a "short and plain statement of the claim showing that the pleader is entitled to relief." Beyond that, the allegations of this claim consist of conclusory and "information and belief" parroting of the elements. Such allegations need not be accepted by the Court. *Twombly*, 550 U.S. at 555. Moreover, the piercing claim relies to some extent on the underlying allegations of "fraud and/or other illegal acts" and wrongdoing (Am. Compl. ¶ 294–95), which the Court has already found are factually insufficient to state a claim. *See Medtronic Navigation, Inc. v. Saint Louis Univ.*, Civil Action Nos. 12–cv–01706–PAB–MJW, 12–cv–02445–PAB–MJW, 2013 WL 5323307 (D. Colo., Sept. 23, 2013)

(dismissing piercing claim; stating that permitting claim to advance despite insufficient allegations of inseparable underlying wrongs would "sanction bootstrapping"). Accordingly, Plaintiffs have failed to plead a viable claim for piercing the corporate veil or reverse piercing.

## Certificate of Review

Defendants assert that Plaintiffs' claims for breach of fiduciary duty, securities fraud, and COCCA violations must be dismissed for the additional reason that Plaintiffs failed to timely file a certificate of review in compliance with C.R.S. § 13-20-602. This argument is moot as to the securities fraud and COCCA claims because they are being dismissed on other grounds. The Court is not persuaded that the breach of fiduciary duty claim should be dismissed on this basis.

The Colorado statute provides, in relevant part:

> (1)(a) In every action for damages or indemnity based upon the alleged professional negligence of … a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each … licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.
>
> ….
>
> (4) The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim.
>
> ….

*Id.* Plaintiffs did not file a certificate of review within sixty days after service of the complaint. Plaintiffs have, however, filed a motion requesting the Court to determine whether a certificate of review is necessary, and if so, to grant Plaintiffs an extension of time to do so.

The Colorado Supreme Court has stated that this statutory language "is sufficiently broad to include <u>every claim which requires proof of professional negligence as a predicate to recovery</u>, whatever the formal designation of the claim might be." *Martinez v. Badis*, 842 P.2d 245, 251 (Colo. 1992) (emphasis added). It has recognized that "breach of fiduciary duty claims

are in <u>some, but not all</u>, contexts basically negligence claims incorporating particularized and enhanced duty of care concepts often requiring the plaintiff to establish the identical elements that must be established by a plaintiff in negligence actions." *Id.* at 251–52 (emphasis added). Thus, in a legal malpractice case that included breach of fiduciary duty claims, the court concluded: "The statute applies to all claims against licensed professionals wherein expert testimony is required to establish the scope of the professional's duty or the failure of the professional to reasonably conduct himself or herself in compliance with the responsibilities inherent in the assumption of the duty." *Id.* at 252. *See also Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 626 (Colo. 1999) (stating that in *Martinez* "we determined that a certificate of review is necessary only with respect to those claims of professional negligence which require the plaintiff to establish a prima facie case by means of expert testimony").

Defendants argue that because Plaintiffs' breach of fiduciary duty claim concerns the duties owed and allegedly breached by Defendants as licensed professionals, expert testimony is necessarily required to establish a *prima facie* case—that is, the applicable standard of care and Defendants' failure to adhere to that standard. Defendants note, for example, that Plaintiffs allege that "[a]cting as variously as IAs, IARs, Brokers and BDs, all defendants served as common law agents and fiduciaries of Mr. Bogue and subsequently of the Bogue Estate." Reply (ECF 59) at 3 (quoting Am. Compl. ¶ 133).

Plaintiffs respond that a certificate of review is not necessary for two reasons: (1) because the Consent Order entered in the Colorado regulatory proceeding "forms the basis for" a *prima facie* case of breach of fiduciary duty; and (2) because specialized investment knowledge is not necessary to understand Plaintiffs' claim, which is based on Defendants' use of Plaintiffs' funds for their own benefit.

Plaintiffs' first argument falls short. Section 13-20-602 (1)(a) requires a certificate of review "for each … licensed professional named as a party…." The Consent Order concerned only Mr. Adams and Choice Investment Management. Moreover, as discussed above, even as to those two Defendants the Consent Order does not address any relationship between them and Bogue or any connection between the statutory and regulatory violations in that proceeding and the right to recover asserted by Plaintiffs in this case.[3]

Based on careful review of the allegations of the Amended Complaint, however, the Court finds that Plaintiffs' claim for breach of fiduciary duty is not one for which expert testimony is necessarily "required to establish the scope of the professional's duty or the failure of the professional to reasonably conduct himself or herself in compliance with the responsibilities inherent in the assumption of the duty." *Badis*, 842 P.2d at 252.

The Amended Complaint does allege that Defendants are, variously, licensed investment advisers, investment adviser representatives, certified financial planners/advisers, and/or brokers. But the breach of fiduciary duty claim does not solely rest on allegations that Defendants breached standards of conduct owed by such licensed professionals to their clients.

For example, as Defendants themselves point out, the Amended Complaint alleges that all Defendants served as common law agents and fiduciaries to Bogue and Plaintiffs. Am. Compl. ¶ 133. This is supported by allegations that Defendants had discretionary authority over Bogue's account and investments, that Defendants and Bogue entered into a relationship of trust

---

[3] Plaintiffs have filed additional regulatory enforcement documents, similar to the Consent Order entered by the Colorado Securities Division. Plaintiffs argue that these documents lend additional support to their allegations and further demonstrate that a certificate of review is unnecessary. *See* ECF 62-1, Financial Industry Regulatory Authority Letter of Acceptance, Waiver, and Consent. Like the Consent Order, these documents have only tangential relevance, if any, to Bogue's investments and the allegations of the Amended Complaint. Given the Court's disposition of the certificate of review issue, it is not necessary to address them further. The Court makes no determination as to the relevance or admissibility of the documents.

and confidence pursuant to which Defendants agreed or assumed a duty to act for Bogue's

benefit, and that Defendants breached that duty by placing and maintaining Bogue's money into

investments that benefitted Defendants rather than Bogue and by failing to disclose that they

were acting in their own interests. *Id.* ¶¶ 23,268–72.

   Proof of a claim for breach of fiduciary duty based on such allegations does not

necessarily require expert testimony. For a plaintiff to recover for breach of fiduciary duty, she

must establish that the defendant was acting as a fiduciary with respect to the matter in question;

that the defendant breached a fiduciary duty; and that the plaintiff suffered losses caused by the

breach. Colo. Jury Instr. 4th, Civ. 26:1. Those elements may be proven by lay testimony in an

appropriate case.

   For example, in the case of stockbrokers, the Colorado Supreme Court has held that

"[w]here a customer relinquishes practical control over his brokerage account to a stockbroker,

the broker owes wide-ranging fiduciary duties to the customer to manage the account in

accordance with the customer's needs and objectives." *Rupert v. Clayton Brokerage of St. Louis,

Inc.*, 737 P.2d 1106, 1109 (Colo. 1987) (citing *Paine, Webber, Jackson & Curtis, Inc. v. Adams,*

718 P.2d 508, 515 (Colo. 1986); *Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir. 1981)).

Whether a fiduciary relationship exists between a broker and customer is a fact issue: "proof of

practical control of a customer's account by a broker will establish that the broker owes fiduciary

duties to the customer with regard to the broker's handling of the customer's account." *Paine,

Webber*, 718 P.2d at 517. "Evidence that the customer has placed trust and confidence in the

broker, with the broker's knowledge, to manage the customer's account for the customer's

benefit will be indicative of the existence of a fiduciary relationship but will not, by itself,

establish that relationship." *Id.* at 517–18.

Thus, in such a case, a jury's ability to determine whether the evidence establishes a fiduciary relationship under Colorado law does not necessarily require expert testimony. Indeed, given the nature of the issue, expert testimony may not even be appropriate in many cases because it would not be necessary to help the jury understand the evidence and determine the fact in issue. *See* Fed. R. Evid. 702(a).

Expert testimony is likewise unnecessary to determine the duties arising from such a fiduciary relationship, if one is found to exist. "In contrast to a claim based upon the violation of a standard of conduct adopted by professionals, the violation of a fiduciary duty depends upon the nature of the specific duties owed by the fiduciary, <u>which the court determines as a matter of law</u> and upon which it instructs the jury." *DeBose v. Bear Valley Church of Christ*, 890 P.2d 214, 225 (Colo. App. 1994) (emphasis added), *rev'd on other grounds*, 928 P.2d 1315 (Colo. 1996). Regarding stockbrokers, in *Rupert* the court held as a matter of law that "[a] broker who becomes a fiduciary of his client must act with utmost good faith, reasonable care, and loyalty concerning the customer's account, and owes a duty to keep informed regarding changes in the market which affect his customer's interests, to act responsibility [*sic*] to protect those interests, to keep the customer informed as to each completed transaction, and to explain forthrightly the practical impact and potential risks of the course of dealing in which the broker is engaged." 737 P.2d at 1109. *See also, e.g., Kunz v. Warren*, 725 P.2d 794, 797 (Colo. App. 1986) ("an agent must disclose all facts relative to the subject matter of his agency which might reasonably affect the decisions of his principal"). Colorado Jury Instructions are expressly designed to have the court instruct the jury as to the specific duty or duties that may exist based on the law and evidence in the case. Colo. Jury Instr. 4th, Civ. 26:4.

Accordingly, the Court finds that Plaintiffs' Amended Complaint alleges a breach of fiduciary duty claim based on Bogue's placing his investments under Defendants' discretionary control, a claim that does not require expert testimony to prove a *prima facie* case. That being the case, Defendants' motion to dismiss this claim for failure to file a certificate of review is not well-founded.[4]

## ORDER

Based on the foregoing, it is

ORDERED that Defendants' Motion to Dismiss the Amended Complaint (ECF 53) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' First, Second, Third, Fifth, and Seventh Claims for Relief are dismissed; the Fourth and Sixth Claims may proceed. It is

FURTHER ORDERED that Plaintiffs' Motion for An Order Determining the Necessity of Certificates of Review [etc.] (ECF 29) is DENIED AS MOOT.

Dated this 1st day of August, 2019.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

---

[4] The Court's determination that expert testimony is not required, for purposes of the certificate of review statute, is not a determination whether or to what extent expert testimony may be permitted based on the evidence and claims as they are developed in discovery and pretrial proceedings.